UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Ritchie Capital Management, LLC,
Ritchie Special Credit Investments, Ltd.,
Rhone Holdings II, Ltd., Yorkville
Investments I, LLC, and Ritchie
Capital Structure Arbitrage Trading Ltd.,

      Appellants,

    v.

Douglas A. Kelley, in his capacity as the
Chapter 11 Trustee of Petters Company,
Inc., VICIS Capital Master Fund, Ltd.,
and the Official Committee of
Unsecured Creditors,

      Appellees.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 14-835 ADM

_____

James Jorissen, Esq., Leonard, O'Brien, Spencer, Gale & Sayre, Ltd., Minneapolis, MN, and Thomas K. Cauley, Jr., Esq., Brian A. McAleenan, Esq., and Michael J. La Mare, Esq., Sidley Austin LLP, Chicago, IL, on behalf of Appellants Ritchie Capital Management, LLC, Ritchie Special Credit Investments, Ltd., Rhone Holdings II, Ltd., Yorkville Investments I, LLC, and Ritchie Capital Structure Arbitrage Trading Ltd.

Terrence J. Fleming, Esq., George H. Singer, Esq., Sandra S. Smalley-Fleming, Esq., and Adam C. Ballinger, Esq., Lindquist & Vennum LLP, Minneapolis, MN, on behalf of Appellee Douglas A. Kelley, in his capacity as the Chapter 11 Trustee of Petters Company, Inc.

David A. James, Esq., and Mark Girouard, Esq., Nilan Johnson Lewis PA, Minneapolis, MN, on behalf of Appellee VICIS Capital Master Fund, Ltd.

Connie A. Lahn, Esq., and David E. Runck, Esq., Fafinski Mark & Johnson, P.A., Eden Prairie, MN, on behalf of Appellees The Official Committee of Unsecured Creditors of Petters Company, Inc. and Petters Group Worldwide, Inc.

_____

## I. INTRODUCTION

This matter is before the undersigned United States District Judge on Appellants Ritchie Capital Management, LLC, Ritchie Special Credit Investments, Ltd., Rhone Holdings II, Ltd.,

Yorkville Investments I, LLC, and Ritchie Capital Structure Arbitrage Trading Ltd.'s (collectively, "Ritchie") appeal [Docket No. 1] of United States Bankruptcy Court Judge Gregory F. Kishel's Order dated February 27, 2014 ("Order") [Docket No. 3, Attach. 1]. In the Order, Judge Kishel approved a global settlement among VICIS Capital Master Fund ("VICIS") and Douglas A. Kelley in his dual capacities as Receiver for Thomas J. Petters ("Receiver") and as Chapter 11 Trustee for certain Petters-owned entities, including Petters Comany, Inc. ("PCI") and Petters Group Worldwide, LLC ("PGW") (the "Trustee"). The settlement includes a provision that VICIS will pay $7.5 million to resolve all claims that have been or could be brought against it by the Trustee and the Receiver. The Order approving the settlement authorizes Kelley to allocate 85% of the settlement proceeds to the PCI bankruptcy estate (the "PCI Bankruptcy Estate") and the remaining 15% to the Petters receivership estate (the "Receivership").

Ritchie appeals the Order, arguing the Bankruptcy Court erred in approving a portion of the settlement proceeds to be allocated to the Receivership. Ritchie contends the allocation: (1) results in a gratuitous transfer from the PCI Bankruptcy Estate to the Receivership; (2) manifests a material conflict of interest between Kelley's concurrent roles as Trustee and Receiver; and (3) violates the Coordination Agreement among the Trustee, Receiver, and United States as to the allocation of recoveries on Petters-related claims among the PCI Bankruptcy Estate and the Receivership. For the reasons set forth below, the decision of the Bankruptcy Court is affirmed.

## II.  BACKGROUND

### A.  Ritchie and VICIS's Investment in Petters Notes

The Ritchie entities are investment funds that made a series of loans to Petters and his

wholly-owned companies PCI and PGW from February through May 2008. Appellee Trustee App. (hereinafter "APP____") [Docket No. 22] at APP009-10. The loans totaled nearly $190 million and were memorialized by promissory notes (the "Petters Notes"). APP009-10, APP203. On February 19, 2008, Ritchie assigned its interest in two of the Petters Notes with a combined face value of $25 million to VICIS. APP010. Ritchie acted as administrative agent for VICIS with respect to the assigned Petters Notes. Id.

### B. Petters and PCI's Payments on Petters Notes

On June 13, 2008, Petters transferred $2,701,200 from his personal checking account to Ritchie in partial payment on the Petters Notes. APP062, APP068. From June 16, 2008 to August 20, 2008, PCI made several payments to Ritchie totaling $21,084,308.81 toward the Petters Notes. APP068. Ritchie used funds received from Petters and PCI to pay $17,703,227.39 to VICIS, based on VICIS's assigned interest in two of the Petters Notes. APP010-11, APP068. Of the amounts received by VICIS, approximately 15% ($2,701,200) originated from Petters, and approximately 85% ($15,002,027.39) originated from PCI. APP068.

### C. Petters's Ponzi Scheme and Resulting Receivership and Bankruptcy Proceedings

In late September of 2008, law enforcement officials conducted search warrants on Petters's home and corporate headquarters, securing evidence a multi-billion dollar Ponzi scheme. APP004-5. Petters had led investors to believe their loans were being used to purchase electronic goods from wholesalers which he would resell at a markup to "big box" retailers. The electronic merchandise did not exist, and investors were repaid with funds from other investors, rather than from earnings on the investments.

On October 2, 2008, the Government filed a civil action under the Fraud Injunction Statute, 18 U.S.C. § 1345, to freeze and preserve assets owned by Petters and others in the event that contemporaneously-filed criminal actions resulted in convictions. APP006-7. A receivership was established for Petters, PCI, PGW, and others. Kelley was appointed as the Receiver. APP007.

On October 11, 2008, Kelley, pursuant to his authority under the Receivership Order, filed Chapter 11 bankruptcy petitions for PCI and PGW. APP002, APP007. A committee of unsecured creditors (the "Creditors' Committee") was appointed on November 21, 2008 to protect the interests of the bankrupt entities' unsecured creditors. APP002; 11 U.S.C. §§ 1102; 1103(c). On December 24, 2008, the United States Trustee's Office appointed Kelley as Chapter 11 Trustee of the PCI Bankruptcy Estate and of certain other bankrupt entities owned by Petters, including PGW.[1] The appointment was approved by the Bankruptcy Court on February 26, 2009. Kelley thus serves as the Trustee for the PCI Bankruptcy Estate and certain other bankrupt Petters entities, and as the Receiver for Thomas Petters and Petters's entities that are not in bankruptcy. He is tasked with assembling the property of the bankruptcy estates and the Receivership estate for ultimate distribution to claimants (i.e., victims and creditors) of the respective estates.

In December 2009, Petters was found guilty by a jury on all criminal counts against him and was sentenced to fifty years. A personal money judgment of $3,522,880,614.10 was entered

---

[1] In addition to PCI and PGW, the other Petters-related bankruptcy debtors for which Kelley serves as Trustee are: PC Funding, LLC; Thousand Lakes, LLC; SPF Funding, LLC; PL Ltd., Inc.; Edge One LLC; MGC Finance, Inc.; PAC Funding, LLC; and Palm Beach Finance Holdings, Inc. APP001-2.

against him as well.  Judge Richard H. Kyle, who presided over the criminal proceedings, denied restitution based on the significant burden it would impose on the Court.  See United States v. Petters, Crim. No. 08-364, 2010 WL 2291486, at *3-5 (D. Minn. June 3, 2010).  Instead, victims are to obtain recovery through the bankruptcy process or the remission of forfeited assets.  Id. at *4-5.

In August 2010, the Government, Receiver, Trustee, and the bankruptcy trustee for Petters's wholly-owned company Polaroid entered into a Coordination Agreement to resolve their competing claims to property that was subject to forfeiture and that belonged to the Receivership and bankruptcy estates.  See APP236-46.  The parties to the Coordination Agreement recognized that a "significant overlap of identity" existed among the creditors and victims of the Receivership and bankruptcy estates, and that competing litigation would diminish the recovery for victims and creditors, and would unduly delay the distribution of assets.  APP237.  The Coordination Agreement sets forth a general plan for the Government, Receiver, and Trustees to coordinate their efforts to recover and distribute property belonging to the Receivership and bankruptcy estates.  APP238-44.

**D. Trustee and Receiver's Fraudulent Transfer Allegations**

On October 10, 2010, the Trustee commenced an adversary proceeding against Ritchie, VICIS, and other defendants, seeking to unwind as fraudulent transfers the payments made by PCI on account of the Petters Notes.  See Kelley v. Ritchie Capital Mgmt., LLC, Adv. No. 10-04440 (Bankr. D. Minn.) (the "Adversary Proceeding").  The Trustee alleges that the payments by PCI were made in furtherance of the Ponzi scheme and are thus avoidable as fraudulent transfers under the Bankruptcy Code, 11 U.S.C. §§ 548, 550, and under the Minnesota Uniform

5

Fraudulent Transfer Act ("MUFTA"), Minn. Stat. §§ 513.41-51.  APP196-200.  The Trustee seeks to recover, or "claw back" the payments for the benefit of the PCI Bankruptcy Estate and its creditors.

Similarly, the Receiver has asserted that the $2,701,200 payment made by Petters on the Petters Notes was made in furtherance of the Ponzi scheme and is also a fraudulent transfer under MUFTA.  APP010-11, APP015.  The Receiver contends the transfer is recoverable from VICIS for the benefit of the Receivership.  APP020.  The Receiver has not yet commenced a lawsuit on this claim.  APP011.

VICIS disputes the Trustee's and Receiver's allegations, asserts defenses to the claims, and has filed a Motion for Judgment on the Pleadings in the Adversary Proceeding.  Id.

**E.  Trustee and Receiver's Settlement with VICIS**

The Trustee, Receiver, and VICIS mediated their dispute before retired U.S. District Judge James M. Rosenbaum.  APP012.  The Creditors' Committee participated in the mediation.  Id.  Following the mediation, the Trustee, Receiver, and VICIS reached a settlement agreement ("Settlement Agreement") resolving all of the Trustee and Receiver's allegations against VICIS.  See APP019-028.

Under the terms of the Settlement Agreement, VICIS agreed to: (1) deliver a $7,500,000 payment to the Trustee to be held pending approval of the Settlement Agreement in District Court and Bankruptcy Court; (2) release all claims against or rights of recovery to the bankruptcy and Receivership estates; (3) assign to the Trustee certain claims VICIS has against the other defendants in the Adversary Proceeding, including Ritchie; and (4) cooperate with the Trustee and Receiver by sharing documentation and information relating to the Petters Notes, the

Adversary Proceeding, and any future claims that may be brought by the Trustee or Receiver. APP020-24.

A motion for approval of the Settlement Agreement was filed by the Receiver in District Court on behalf of the Receivership and by the Trustee in Bankruptcy Court on behalf of the PCI Estate. Both motions stated that the settlement payment would be allocated pro rata among the PCI Bankruptcy Estate and the Receivership based on the sources of funds used to make the transfers. See, e.g., APP015. No objections to the District Court motion were filed or raised at the hearing on the motion. APP248. Based on terms of the Settlement Agreement and the representation in the Receiver's motion and at hearing that the Receivership would receive 15% of the settlement proceeds, the District Court approved the settlement on behalf of the Receivership. APP247-49.

With respect to the Trustee's motion in Bankruptcy Court, Ritchie filed an objection arguing as it does here that the settlement proceeds should not be shared with the Receivership. APP038–49. The Creditors' Committee filed a response to Ritchie's objection and stated that the Creditors' Committee supported the approval of the Settlement Agreement and the related allocation of the settlement proceeds. APP070-80. On February 27, 2014, at the close of oral argument, Bankruptcy Judge Kishel overruled Ritchie's objection and granted the motion from the bench. APP146. The legal and factual bases for the decision were stated on the record. APP146-157. The Order approving the Settlement Agreement was issued the same day, and authorizes the Trustee to allocate the settlement proceeds "among the PCI Bankruptcy Estate and the receivership in a manner that is consistent with the Motion." APP083. Ritchie now appeals, arguing the Bankruptcy Court erred in allowing a portion of the settlement proceeds to be

allocated to the Receivership.

### III. DISCUSSION

**A.     Standard of Review**

A bankruptcy court's approval of a settlement will only be set aside for plain error or an abuse of discretion. Tri-State Fin., LLC v. Lovald, 525 F.3d 649, 654 (8th Cir. 2008); Interlachen Harriet Invs. Ltd. v. Kelley (In re Petters Co., Inc.), 455 B.R. 166, 168 (B.A.P. 8th Cir. 2011). "An abuse of discretion occurs if the court bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." Tri-State Fin., 525 F.3d at 654 (quoting In re Racing Servs., 332 B.R. 581, 584 (B.A.P. 8th Cir. 2005)).

The standard for approving a settlement is "whether the settlement is fair and equitable and in the best interests of the estate." Id. (quoting Martin v. Cox (In re Martin), 212 B.R. 316, 319 (B.A.P. 8th Cir. 1997)). In approving a settlement, it is not necessary for the court to find that the settlement reaches the best possible result. Id. Rather, the court is only required to find "that the settlement does not fall below the lowest point in the range of reasonableness." Id. (quoting Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968)).

**B.     Analysis**

Bankruptcy Rule 9019 authorizes a bankruptcy court to approve a compromise or settlement following a motion by the trustee, proper notice, and a hearing. In exercising its discretion to approve a settlement, a bankruptcy court weighs the following four factors, known as the Flight Transportation factors:

> (1) the likelihood of success in the litigation; (2) the difficulties, if any, in collection matters; (3) the complexity of the litigation and the

8

> attendant expense, inconvenience, and delay; and (4) the paramount interest of the creditors and a proper deference to their reasonable views.

ReGen Capital III, Inc. v. Official Comm. of Unsecured Creditors, (In re Trism, Inc.), 282 B.R. 662, 667 (B.A.P. 8th Cir. 2002) (citing In re Flight Transp. Corp. Sec. Litig., 730 F. 2d 1128, 1135 (8th Cir. 1984)).

In appealing the Bankruptcy Court's Order approving this settlement, Ritchie states it "does not challenge the Settlement Agreement, or the mediation that led to it." Appellants' Br. [Docket No. 17] at 20. Rather, Ritchie challenges the agreement to allocate a portion of the proceeds to the Receivership. Ritchie argues the allocation constitutes a gratuitous transfer from the PCI Bankruptcy Estate to the Receivership, results from Kelley's conflicting roles as Receiver and Trustee, and violates the Coordination Agreement. All of the arguments lack merit.

**1. Allocation Not Gratuitous**

Ritchie argues the Trustee and Receiver's agreement to allocate the $7.5 million settlement payment is unreasonable because Paragraph 2 of the Settlement Agreement states that VICIS shall "deliver to the Trustee . . . payment in the amount of Seven Million Five Hundred Thousand Dollars ($7,500,000.00)." APP020 (emphasis added). Thus, argues Ritchie, the Trustee has no legal obligation to share the settlement proceeds with the Receiver, and the allocation effects a gratuitous transfer of funds from the PCI Bankruptcy Estate to the Receivership.

VICIS paid $7.5 million to settle the Receiver's claims on behalf of the Receivership as well as the Trustee's claims on behalf of the Bankruptcy Estate. See VICIS Resp. Br. [Docket

No. 20] at 2 (stating VICIS "agreed to make the payment in return for full and complete releases from the Receiver, the Trustee, the Debtors and the Petters Estates"). Significantly, the Settlement Agreement requires the return of VICIS's settlement payment if the District Court does not approve the Settlement Agreement on behalf of the Receivership. See Settlement Agreement ¶ 2 ("In the event this Agreement is not approved by the Orders . . . of the District and Bankruptcy Courts, then the Settlement paid over by the Defendants and held by the Trustee shall be immediately returned to the Defendants in its entirety . . . ."). Judge Kishel correctly observed that "there was going to have to be some allocation on the claims that could have been made against Vicis by the receivership on account of transactions made through Tom Petters." APP147.

Among the claims released by the Receiver was the claim that the Receivership was entitled to recover Petters's transfer of $2,701,200 from his personal checking account. This claim could not have been brought by the Trustee on behalf of the Bankruptcy Estates, because the property transferred did not belong to PCI, but to Petters. Thus, allocating a portion of the settlement payment to the Receiver based on the Receiver's release of claims that belonged solely to the Receivership does not effectuate a gratuitous transfer from the Bankruptcy Estate to the Receivership.

Ritchie further contends the Trustee was not obligated to allocate 15% of the settlement proceeds to the Receivership because the record does not show that the Receiver has viable claims against VICIS. Appellants' Br. at 14-16. However, the evidence of record shows Petters made a $2,701,200 payment from his individual checking account on the Petters Notes. This evidence supports a viable fraudulent transfer claim by the Receiver under state law, because

Petters transferred the funds in furtherance of his scheme to defraud creditors. See Minn. Stat. § 513.44(a)(1) (stating a transfer made by a debtor is fraudulent if the debtor made the transfer "with actual intent to hinder, delay, or defraud any creditor of the debtor"). Thus, the Receiver has a viable fraudulent transfer claim under state law.

Ritchie also contests the amount of the settlement proceeds to be allocated to the Receivership. The settlement proceeds are being allocated on a pro rata basis according to the source of the funds that were ultimately transferred to VICIS. Of the total amount transferred to VICIS, approximately 15% ($2,710,200) originated from Petters, and about 85% ($15,002,027) originated from PCI. Thus, 15% of the settlement proceeds will go to the Petters Receivership, and 85% of the proceeds will go to the PCI Bankruptcy Estate. Ritchie argues the pro rata division is unfair because it is based on an assumption that the Receiver's claims are equal in strength to the Trustee's. Ritchie insists the Receiver has only state law claims, whereas the Trustee also holds claims under the Bankruptcy Code, and that the Receiver's state law claims face more hurdles than the Trustee's claims under the Bankruptcy Code.

Although the Receiver's state law claims may differ from the Trustee's claims under the Bankruptcy Code, "it is not necessary for a bankruptcy court to conclusively determine claims subject to a compromise, . . . for by so doing, there would be no need of settlement." In re Martin, 212 B.R. at 319. "Rather, the court need only canvas the issues to determine that the settlement does not fall below the lowest point in the range of reasonableness." Id. (quotation marks omitted).

Here, the Bankruptcy Court properly applied the four Flight Transportation factors to determine whether the proposed allocation was reasonable. APP156. As to the first and third

11

factors (the probability of success and the complexity of the litigation), Judge Kishel observed that the "complex issues, unsettled law and massively complicated factual disputes" involved in the litigation made it difficult to accurately predict the outcome that could have been obtained through litigation. Id.  He further determined that the proposed allocation involves "claims for recovery under color of fraudulent transfer and otherwise that arise from separate payments made with separate funds on separate dates and, therefore, are substantively distinct." APP155-56.  He thus concluded that there was a rational basis for making the allocation based upon a formulaic comparison of the amounts transferred.  APP156.  With respect to the second and fourth factors (the difficulties in collecting on a judgment and deference to the creditors' reasonable views) Judge Kishel noted the allocation provided a "bird in the hand versus [a] bird in the bush," and that the Creditors' Committee had actively participated in the settlement process and supported the allocation.  APP155.  He therefore determined that the proposed allocation fell higher than the minimum level of reasonableness "by a good margin."  APP156.  The Bankruptcy Court applied the correct view of the law, and its assessment of the evidence was not clearly erroneous.  Therefore, the Bankruptcy Court did not abuse its discretion in approving the proposed allocation, and the settlement will not be set aside.

**2. Kelley Not Conflicted in Agreeing to Allocation**

Ritchie also argues that the Bankruptcy Court abused its discretion in approving the allocation of the settlement proceeds because Kelley's dual roles as Trustee and Receiver caused him to be inherently conflicted when allocating the proceeds.  Ritchie contends the "overarching problem" with Kelley's dual roles "is lack of a process that merits trust."  Reply Br. [Docket No. 25] at 4.  Ritchie's position is unfounded, because the process used to arrive at the allocation

included multiple assurances of trustworthiness.  First, the allocation resulted from a mediated settlement before retired United States District Court Judge James Rosenbaum.  Additionally, the Creditors' Committee, which acts as a fiduciary for the PCI Bankruptcy Estate, participated fully in the mediation and supports the proposed allocation.  Further, as discussed earlier, the division of the settlement proceeds is a purely mathematical calculation that is objectively fair.  Finally, although the allocation was not formally documented in the Settlement Agreement, the Trustee's verified motion to approve the Settlement Agreement gave creditors and other interested parties full notice of and an opportunity to object to the intended disposition of the settlement proceeds.  See APP015-16.  Thus, the Bankruptcy Court did not abuse its discretion when it determined there was no manifestation of a conflict.

### 3.  Allocation Does Not Violate Coordination Agreement

Ritchie further argues that allocation of the settlement proceeds violates Paragraph III.B.2 of the Coordination Agreement among the United States, the Receiver, and the bankruptcy Trustees for Petters's bankrupt entities.  That provision states:

> If there is a recovery (by settlement or following litigation) based on parallel claims pursued by Kelley, as the Receiver and Trustee, the proceeds of the recovery will inure to the benefit of the bankruptcy estates; unless there is a judgment or recovery based solely on a claim made by the Receiver, in which case, the proceeds will be turned over to the United States for the benefit of victims through remission of assets after the bankruptcy estates have been reimbursed for all fees and expenses paid or incurred in conjunction with the action that resulted in the recovery.

APP244.  Ritchie contends the settlement proceeds are from parallel claims pursued by Kelley as Receiver and Trustee, and that the proceeds must therefore inure to the benefit of the PCI Bankruptcy Estate.

13

As an initial matter, Ritchie is not a party to the Coordination Agreement, which explicitly states: "This Agreement and all of its provisions and conditions are for the sole and exclusive benefit of the parties to this Agreement. No person or entity which is not a party to this Agreement will have or acquire any rights or remedies under or by reason of this Agreement." APP245. Thus, Ritchie's standing to enforce the Coordination Agreement is dubious.

Even if Ritchie were to have standing under the Coordination Agreement, the proposed allocation does not violate the Agreement's provision stating that parallel claims by the Receiver and Trustee will inure to the benefit of the bankruptcy estates. As noted above, the proceeds to be allocated to the Receivership constitute recovery on a claim that only the Receiver could bring because the transfer challenged by the Receiver was of property belonging to Petters, rather than PCI. Further, the Coordination Agreement provides that proceeds which constitute a "recovery based solely on a claim made by the Receiver . . . will be turned over to the United States for the benefit of victims through remission." APP244.

Not only does the proposed allocation not violate the Coordination Agreement, it advances the Agreement's express goals of maximizing recovery to victims and creditors and minimizing expenses through coordination of the Receiver and Trustee's respective efforts. <u>See</u> APP237. Therefore, the Bankruptcy Court did not abuse its discretion by overruling Ritchie's objection and approving the allocation.

## IV. CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Ritchie's Appeal [Docket No. 1] is **DENIED**;

2. The Bankruptcy Court's Order of February 27, 2014 [Docket No. 3, Attach. 1] is **AFFIRMED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

BY THE COURT:


　　　s/Ann D. Montgomery　　
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  June 12, 2014.